## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| Cassandra Gimmer,<br><br>                    Plaintiffs,<br><br>vs.<br><br>Advanced Correctional Healthcare, Inc., Dr.<br>Karen Butler, Dr. William Scheidt, Nurse<br>Anthony Shabrack, Nurse Donna Johnson,<br>and County of Blue Earth, Minnesota,<br><br>                    Defendants. | Case No.: 18-cv-149<br><br><br>**COMPLAINT AND DEMAND<br>FOR JURY TRIAL** |

The above captioned Plaintiff for her causes of action against the above-named

Defendants, states and alleges as follows:

1.

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 for Defendants' violation

of Cassandra Gimmer's constitutional rights guaranteed by the Eight and Fourteenth

Amendment of the Constitution of the United States, while acting under the color of

state law. Plaintiff also brings this action as an action for medical negligence.

### JURISDICTION

2.

This action arises under the United States Constitution, particularly under the

provisions of the Fourteenth Amendment, and under federal law, particularly 42 U.S.C.

§ 1983 of the Civil Rights Act.

3.

This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives this Court original jurisdiction over civil actions arising under the federal laws and federal constitution, and pursuant to 28 U.S.C. § 1343(a)(3)-(4), which gives this Court original jurisdiction over civil actions to redress the deprivation under color of state law, statute, ordinance, regulation, custom or usage of any federal constitutional right or any right secured by federal statutes including 42 U.S.C. § 1983.

## VENUE

4.

Venue is proper in the District of Minnesota, as the acts and transactions complained of herein all occurred within this District.

## PARTIES

5.

Plaintiff Cassandra Gimmer is a citizen of the State of Minnesota.  At all times material herein, she was incarcerated in the Blue Earth County, Minnesota, Jail.

6.

Defendant Advanced Correctional Healthcare, Inc.  ("ACH") is a corporation organized and existing under the laws of the State of Illinois with its principal place of business at 3922 West Baring Trace, Peoria, IL 61615 and a registered agent for a service in Minnesota of CT Corporate Systems. Inc., 1010 Dale Street North, St. Paul, MN 55117. On information and belief, at all times material herein, ACH provided health care services at the Blue Earth County, Minnesota Jail.

7.

On information and belief, Defendant ACH at all times material, had a contract with Defendant Blue Earth County—either directly or indirectly through a third patty health services organization—to provide medical services, including physician and nursing services, at the Blue Earth County, Minnesota Jail. As such, Defendant ACH and its employees were the agents of Blue Earth County and were acting under color of state law at all times herein material.

8.

Defendant ACH is liable for the acts and omissions of its employees, including Defendant Nurse Anthony Shabrack, Defendant Dr. William Scheidt, and Defendant Dr. Karen Butler. Defendant ACH was responsible for the training and supervision of its nurses and physicians.

9.

Upon Information and belief, Defendant Nurse Anthony Shabrack ("Shabrack"), was, at all times material herein, employed by Defendant ACH and was providing nursing and medical services to inmates at the Blue Earth County jail pursuant to his employment with ACH and pursuant to, on information and belief, a contract between ACH and Defendant Blue Earth County. As such, Defendant Shabrack was, at all times material herein, an agent of Blue Earth County and acting under color of state law.  He is being sued in his individual capacity as well as her official capacity as a nurse at the Blue Earth County jail.

10.

Upon Information and belief, Defendant Doctor William Scheidt ("Scheidt"), was, at all times material herein, employed by Defendant ACH and was providing physician and medical services to inmates at the Blue Earth County jail pursuant to his employment with ACH and pursuant to, on information and belief, a contract between ACH and Defendant Blue Earth County. As such, Defendant Scheidt was, at all times material herein, an agent of Blue Earth County and acting under color of state law. He is being sued in his individual capacity as well as her official capacity as a Doctor at the Blue Earth County jail.

11.

Upon Information and belief, Defendant Doctor Karen Butler ("Butler"), was, at all times material herein, employed by Defendant ACH and was providing physician and medical services to inmates at the Blue Earth County jail pursuant to her employment with ACH and pursuant to, on information and belief, a contract between ACH and Defendant Blue Earth County. As such, Defendant Butler was, at all times material herein, an agent of Blue Earth County and acting under color of state law. She is being sued in his individual capacity as well as her official capacity as a Doctor at the Blue Earth County jail.

12.

Upon Information and belief, Defendant Nurse Donna Johnson ("Johnson") was, at all times material herein, employed by Defendant Blue Earth County and was providing nursing and medical services to inmates at the Blue Earth County jail

pursuant to her employment with Blue Earth County. As such, Defendant Johnson was, at all times material herein, an agent of Blue Earth County and acting under color of state law.  She is being sued in her individual capacity as well as her official capacity as a nurse at the Blue Earth County jail.

13.

Defendant Blue Earth County, Minnesota ("Blue Earth County") is, and at all relevant times was, a political entity charged with the control and supervision of all law enforcement personnel, jail personnel and contractors in the Blue Earth County Jail, including Defendants Shabrack, Scheidt, Butler, and Johnson.

**FACTUAL BACKGROUND**

14.

On March 19, 2011, while Ms. Cassandra Gimmer was an inmate at the Blue Earth County Jail, a jail Incident Report stated that her Blood sugar level were and that she was having issues with diabetes.  An Incident report from the next day—March 20, 2011—stated that Plaintiff was "newly diagnosed with diabetes and her blood sugar has been an issue over the last two days."  She tested a 223.  According to a Health Services Transfer Form dated April 4, 2011, Plaintiff was started on Metformin 500 mg. Bid on March 18, 2011.

15.

Plaintiff was re-booked into the jail on November 18, 2011.   The Medical Screening Admission Form of that date shows that she was positive for diabetes and was continuing to take Metformin for it. Likewise, the Medical Progress Note of that

same date shows "Metformin 500 mg Bid."

16.

Plaintiff was re-booked into the jail again on March 2, 2012.  Again, the Medical

Screening Admission Form of that date shows, that she was positive for diabetes and

was continuing to take Metformin for it.

17.

On March 2, 2012—however, a "Nurses Memo" states that Plaintiff's "blood

sugars have been good.  No need for meds at this time.  Continue blood sugar checks."

The Memo was signed "Jail Nurse."  On information and belief, the "Nurses Memo"

was signed by either Defendant Shabrack or Defendant Johnson, as they were the only

nurses Plaintiff recalls having interactions with at the jail.

18.

On or about March 2, 2012, Defendant Shabrack told Plaintiff that they believed

she was manipulating the jail staff in order to see her boyfriend, who was also

incarcerated at the time.  Defendant Shabrack further told Plaintiff that because of this

and the fact that her blood sugar levels had been within acceptable levels for two days,

she no longer needed Metformin and would no longer receive Metformin or have her

blood sugar levels tested.  Defendant Shabrack also told her that "you no longer had

diabetes."   Plaintiff no longer received her Metformin after this conversation.

19.

Three days later, on March 5, 2012, Plaintiff filed out an "Inmate

Communications" form stating, "I haven't received not a one of my meds yet my sugar

was way high for me to eat breakfast to chance making it higher." At the bottom of the

form is a note dated March 5, 2012 stating, "Per Dr. Scheidt BS WNL No Need for

meds." Further, a March 17, 2012 Health Services Transfer Form" lists "None" under

"Current Medications." The note is signed by Defendant Johnson.

20.

In March 2013, someone made a request for Plaintiff to start getting Metformin

again, but the March 15, 2013 Protocol Medication Verification Form shows that the

approval for "metformin 500 mg. Bid" was not approved. The form lists a Defendant

Butler as the physician and is signed by Defendant Shabrack. Thus, Plaintiff continued

to not receive the needed diabetes medication.

21.

Also on March 15, 2013, Plaintiff fainted and reported seeing white spots. A

Mental Health Services Clinical Contact report of that same day—March 15, 2013 shows

that Plaintiff "expressed some concern over not taking Depakote and Metformin."

22.

A March 18, 2013, a Progress Note shows that Plaintiff was still concerned about

not getting Metformin and Dr. Scheidt was to be called about it. In March 2013, Plaintiff

had at least three episodes of headaches, nose bleeding, dizziness, and blurred vision.

Her diabetes, which jail medical staff had apparently either believed had been "cured"

or was not in need of medication, was never treated.

23.

Beginning in February 2014, Plaintiff had a series of medical incidents in the jail

that involved headaches, vision issues, nose bleeds and numbness. Blood sugar checks were few and far between. For example, a medication status sheet from 2014 shows that they were started on March 9, 2014, but ended the next day on March 10, 2014. On June 27, 2014, Plaintiff suffered a seizure and Defendant Butler ordered jail staff to take her blood sugar level. On July 17, 2014, she had another seizure type event.

24.

In late October 2014, Plaintiff became extremely ill. She asked for medical help but was made to sit in her own urine and feces in her cell for at least two days. Fellow inmates helped clean her up while jail staff told her there was nothing wrong with her, except possibly the flu. On October 31, 2014, jail staff finally reported that Plaintiff was found in her bed lying in her own urine. The Plaintiff was found to be nonresponsive to verbal commands, a sternum rub, or Ammonia Inhalant. She was incoherent and was sent to the Mankato Hospital by ambulance.

25.

Plaintiff presented to the Emergency Department of Mankato Hospital in a nonresponsive state, demonstrating classic Kussmauls breathing and in sever distress. The ED record indicated "she had not been receiving any insulin per jail records and her history of [Diabetes Mellitus] is unclear at this time." (*Id*.). Further, "her ABG demonstrates a very critical PH of 6.8, with ketones in urine, elevated beta hydroxybutyrate and glucose." Glucose is reported elsewhere in the records as being at 798 upon her arrival. Final diagnosis was severe diabetic ketoacidosis, metabolic acidosis, and pyelonephritis.

26.

Plaintiff was intubated for acute respiratory failure and for airway control and was admitted to the intensive care unit. She was placed on mechanical ventilatory support. Plaintiff was in intensive care for six days and spent an additional five days in the hospital until her metabolic acidosis improved sufficiently to allow satisfactory control of her diabetes. She was started on insulin, which was to be continued after she returned to the jail. She continues to suffer from a variety of medical conditions brought about by the jails failure to provide her with diabetes medications.

## COUNT I
## DENIAL OF DUE PROCESS RIGHT TO ADEQUATE MEDICAL CARE
### (As to all Defendants except Blue Earth County)

27.

Plaintiff hereby realleges and incorporates by reference the allegations complained of above as if set forth specifically herein.

28.

While incarcerated in Defendants' custody, Plaintiff had a constitutional right under the substantive due process clause of the Eight and Fourteenth Amendments to the United States Constitution to have her basic human needs met, including receiving adequate medical care. Deliberate indifference to an inmate's serious medical needs constitutes a violation of Plaintiff's Eight and Fourteenth Amendment rights.

29.

Plaintiff's constitutional right to receive adequate medical care under the Eight and Fourteenth Amendments was clearly established.

30.

Defendants' behavior far surpassed "mere negligence." Defendants willfully denied Plaintiff adequate medical care, and were deliberately indifferent to Plaintiff's medical needs. Plaintiff had an objectively serious medical need to receive medications for her diabetes, which had been previously provided.  Furthermore, Defendants knew of and disregarded a substantial risk of serious harm to Plaintiff's health and safety. Defendants' acts and/or omissions in response to Plaintiff's medical needs were so grossly incompetent and inadequate as to shock the conscience.

31.

Additionally, on information and belief, it was the policy and procedure of Defendant ACH to deny inmates proper and needed medications.

32.

As a direct and proximate result of Defendants' acts and/or omissions, as described herein, Defendants, while acting under color of state law, deprived Plaintiff of her federal constitutional right to receive adequate medical care in violation of the Eight and Fourteenth Amendment and 42 U.S.C. § 1983.

33.

As a direct and proximate result of Defendants' acts and/or omissions, as described herein, Plaintiff suffered, and will continue to suffer damages, including medical expenses, pain and suffering, and loss of enjoyment of life.

## COUNT II
## DENIAL OF DUE PROCESS RIGHT TO ADEQUATE MEDICAL CARE
### (As to Defendant Blue Earth County)

34.

Plaintiff hereby realleges and incorporates by reference the allegations complained of above as if set forth specifically herein.

35.

While incarcerated in Defendant Blue Earth County's custody, Plaintiff had a constitutional right under the substantive due process clause of the Eight and Fourteenth Amendments to the United States Constitution to have her basic human needs met, including receiving adequate medical care.  Deliberate indifference to an inmate's serious medical needs constitutes a violation of Plaintiff's Eight and Fourteenth Amendment rights.

36.

Further, on information and belief, Blue Earth County has had an on-going and systematic failure to properly provide adequate medical care, including providing adequate and needed prescription medications, such that it was a *defacto* policy and procedure of Blue Earth County not to provide adequate medical care, including providing adequate and needed prescription medications.

37.

Defendant Blue Earth County's behavior far surpassed "mere negligence." Defendant Blue Earth County's *defacto* policy of on-going and systematic failure to properly provide adequate medical care, including providing adequate and needed

prescription medications, constituted a willful denial of adequate medical care to Plaintiff. Defendant Blue Earth County was deliberately indifferent to Plaintiff's medical needs. Plaintiff had an objectively serious medical need to receive medications for her diabetes, which had been previously provided. Furthermore, Defendant Blue Earth County knew of and disregarded a substantial risk of serious harm to Plaintiff's health and safety. Defendant Blue Earth County's acts and/or omissions in response to Plaintiff's medical needs were so grossly incompetent and inadequate as to shock the conscience.

38.

As a direct and proximate result of Defendant Blue Earth County's acts and/or omissions, as described herein, Defendant Blue Earth County, while acting under color of state law, deprived Plaintiff of her federal constitutional right to receive adequate medical care in violation of the Eight and Fourteenth Amendment and 42 U.S.C. § 1983.

39.

As a direct and proximate result of Defendants' acts and/or omissions, as described herein, Plaintiff suffered, and will continue to suffer damages, including medical expenses, pain and suffering, and loss of enjoyment of life.

**COUNT III**
**FAILURE TO TRAIN**
**(as to Defendant ACH)**

40.

Plaintiffs hereby reallege and incorporate by reference the allegations complained of above as if set forth specifically herein.

41.

Plaintiff's damages were also a direct result of the failure of Defendant ACH to properly train its staff, including Defendants Shabrack, Scheidt, Butler, and Johnson on how to adequately investigate, assess, and evaluate inmates' medical needs, and how to determine whether to immediately provide medical care and/or seek outside medical care for ailing inmates.

42.

As a direct and proximate result of Defendants' acts and/or omissions, as described herein, Plaintiff suffered, and will continue to suffer damages, including medical expenses, pain and suffering, and loss of enjoyment of life.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, jointly and severally, as follows:

A.      Finding that Defendants, and each of them, committed acts and omissions that constituted violations of the Eight and/or Fourteenth Amendment to the United States Constitution, actionable under 42 U.S.C. §1983;

B.      Awarding judgment in favor of Plaintiffs against the Defendants, and each of them, jointly and severally in an amount to be determined at trial as and for compensatory damages;

C.      Awarding Plaintiffs all applicable pre-judgment and post-judgment interest;

D.      Awarding Plaintiffs their attorney's fees and costs pursuant to 42 U.S.C.

§ 1988 and/or their contingency fee agreement; and

E.      Awarding such other and further relief as the Court may deem just and

equitable.

**A TRIAL BY JURY ON ALL ISSUES SO TRIABLE IS HEREBY REQUESTED**.

**BENNEROTTE & ASSOCIATES, P.A.**

Date January 22, 2018                    By:   *s/ Vincent J. Mocci*o
                                             Vincent J. Moccio (MN# 184640)
                                             *vincent@ bennerotte.com*

                                             3085 Justice Way, Suite 200
                                             Eagan, Minnesota 55121
                                             T:   651--842--9257
                                             F:   651--288--0860

                                             *ATTORNEYS FOR PLAINTIFF*